# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH D. PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-878-D |
| | ) | |
| WHB TRANSPORTATION, | ) | |
| L.L.C. and WH BRAUM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Kenneth Peterson ("Peterson") contends Defendants violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by interfering with his right to take medical leave and retaliating against him for taking said leave. Before the Court is Defendants' Motion for Summary Judgment [Doc. No. 37]. Plaintiff filed his response in opposition [Doc. No. 39] and Defendants replied [Doc. No. 42]. Later, upon leave from the Court, Plaintiff filed a surreply [Doc. No. 49] to which Defendants filed their response [Doc. No. 53]. The matter is fully briefed and at issue.

## BACKGROUND

The following material facts are either uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Peterson. Immaterial facts,

facts not properly supported by the record, and legal arguments or conclusions were omitted.

On or about March 3, 1992, Peterson was hired as a full-time employee by Braum's Warehouse[1] as a dockworker, where his main duty was unloading trucks. His supervisor at the time was Barry Templeman. Peterson resigned four years later, but was rehired shortly thereafter, on July 9, 1997, to work on the loading dock and in the warehouse. On May 8, 2003, Peterson began employment with Braum's Trucking as a truck driver, where his manager and supervisor was Scott Depee. Peterson was designated as an "extra board" driver for Braum's Trucking, which meant he did not have a designated truck route and only filled in for drivers that were absent from work. Peterson would later became a full-time driver for Braum's Trucking.

For safety reasons, Peterson was subjected to routine medical examinations by the Oklahoma Department of Transportation ("ODOT"). In 2011, Peterson informed the ODOT medical examiner that he suffered from depression.[2] Faced with

---

[1] Braum's is a privately owned and operated chain of fast food restaurants and grocery stores. Defendants are different departments of the Braum's corporate structure. The parties refer to Defendant WHB Transportation, L.L.C. as "Braum's Trucking" and Defendant WH Braum, Inc. as "Braum's Warehouse." For simplicity and continuity, the Court shall do the same.

[2] Peterson began to experience depression as early as 2005. However, Peterson testified he did not recall telling anyone at Braum's Trucking that he experienced depression prior to 2011.

2

this knowledge, Depee was nevertheless unconcerned about Peterson's ability to drive and Peterson, indeed, continued to drive trucks for Braum's Trucking.[3]

On July 6, 2013, Peterson admitted himself to the hospital because he was experiencing, in his words, "mental issues" that included road rage and depression. Peterson stated he was also having suicidal and homicidal thoughts of driving his truck into oncoming traffic. Peterson was discharged from the hospital on July 12, 2013, but did not immediately return to work because he did not feel safe driving. On July 29, 2013, Peterson experienced recurring depression and suicidal thoughts and readmitted himself to the hospital; he was discharged on August 9, 2013. Again, Peterson did not immediately return to work following his discharge because he was (1) fearful of driving a truck; (2) unsure if he could return to truck driving; (3) apprehensive about finding a new line of work; and (4) burned out on truck driving.

As a result of his hospitalizations, Peterson submitted a request for FMLA leave, citing "major depression" as the reason for the request.[4] Peterson also told Depee he was experiencing "mental issues." After returning from leave, Peterson

---

[3] Peterson's physician noted that he experienced road rage in 2008 and again in 2012. Plaintiff did not inform anyone about this diagnosis because he feared he would lose his license and job. There is no indication in the record that Defendants were aware of Peterson's road rage until after this litigation had commenced.

[4] Due to errors made by Braum's Trucking in processing his paperwork, Peterson did not have the opportunity to take FMLA leave earlier. Moreover, although Peterson was not verbally advised of his right to take intermittent leave, Defendant placed postings advising employees of their FMLA rights.

asked Depee to be reassigned to the warehouse so he could adjust to his medications and Depee granted the request. However, transfers within Braum's departments are permanent, and Peterson's transfer resulted in him receiving less pay. Depee, however, did not inform Peterson of either consequences beforehand. Peterson also asked Templeman if he could return to truck driving, but Templeman said Peterson was not ready. Later, Peterson asked Depee one time if he could drive again, but Depee was noncommittal. Neither party requested a medical examination to determine if Peterson was medically fit to operate a truck again.

Peterson resigned two years later, on July 31, 2015. He testified he had already secured other employment at the time of his resignation and would have continued to work in the warehouse if his current employer had not hired him. To date, he does not know why he was not reinstated as a truck driver.

## STANDARD OF DECISION

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Patel v. Hall*, 849 F.3d 970, 978 (10th Cir. 2017) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). The substantive law will identify which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. *Equal Employment Opportunity Comm'n v. BNSF Railway Co.*, 853 F.3d 1150, 1155 (10th Cir. 2017).

The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015); *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991) ("A motion for summary judgment is not meant to precipitate a mini-trial before the real trial begins. However, summary judgment may be granted 'unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.*

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be

resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004).

## DISCUSSION

Peterson asserts two claims under the FMLA: (1) Defendants interfered with his right to take FMLA leave in violation of 29 U.S.C. § 2615(a)(1), and (2) that, upon returning to work, Defendants retaliated against him for taking FMLA leave in violation of 29 U.S.C. § 2615(a)(2).[5] He also alleges he was constructively discharged for taking FMLA leave.

Peterson's interference and retaliation theories require different showings. To establish an FMLA interference claim, Peterson must show that (1) he was entitled to FMLA leave, (2) that some adverse action by Defendants interfered with his right to take FMLA leave or be reinstated after leave, and (3) that Defendants' action was related to the exercise or attempted exercise of Peterson's FMLA rights. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citing *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)). Interference with FMLA rights is a statutory violation regardless of the employer's intent. *Metzler v. Fed.*

---

[5] Section 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Under § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." The Tenth Circuit has construed §2615(a)(2) as creating a retaliation theory of recovery under the statute. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1004 (10th Cir. 2011).

*Home Loan Bank*, 464 F.3d 1164, 1180 (10th Cir. 2006). As the Tenth Circuit has explained, the interference theory is "derived from the FMLA's creation of substantive rights" and an employer violates the FMLA when it interferes with the FMLA-created right to medical leave or reinstatement following leave. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

To make out a prima facie retaliation claim, Peterson must show that: (1) he engaged in a protected activity; (2) Defendants took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *See id*. (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006)). At the summary-judgment stage, a court reviews FMLA retaliation claims under the burden-shifting framework for employment-discrimination claims that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Peterson establishes a prima facie case, Defendants "must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017). If Defendants produce such a reason, the burden shifts back to Peterson to show there is a genuine dispute of

material fact as to whether Defendants' explanations for the adverse employment action are pretextual. *Id.*[6]

"Beyond differences in the elements and burdens of proof, the two claims differ with respect to the timing of the adverse action. In order to satisfy the second element of an interference claim, [Peterson] must show that [he] was prevented from taking the full twelve weeks' [sic] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. … In contrast, a retaliation claim may be brought when [Peterson] successfully took FMLA leave, was restored to [his] prior employment status, and was adversely affected by an employment action based on incidents post-dating [his] return to work." *Campbell*, 478 F.3d at 1287-88 (internal citations omitted).

## I. FMLA Interference

In the Court's view, the salient focus centers on Defendants' actions regarding Peterson's request to take FMLA leave. Reviewing the record as a whole, the Court finds Defendants' Motion should be granted on Peterson's interference claim. "[A]n interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014).

---

[6] The burden shifting analysis does not apply to Peterson's interference claim. *DePaula*, 859 F.3d at 978 ("[T]he *McDonnell Douglas* burden shifting analysis does not apply [to an FMLA interference claim].") (citation omitted).

Even assuming Peterson can satisfy the first element of entitlement, he has not demonstrated that the refusal to reinstatement him to his truck driving position was either "adverse" or related to the exercise of his FMLA rights.

Peterson requested, and was granted, FMLA leave to address his depression. Likewise, upon returning to work, Peterson requested, and was granted, reassignment to another position while he adjusted to his medication. In this regard, Peterson cites no authority that required Defendants to allow him to rescind his voluntary request for reassignment. Indeed, relevant decisions establish the contrary. *Cf. Miles v. Nashville Elec. Service*, 525 F. App'x 382, 388 (6th Cir. 2013) (unpublished) ("[T]he FMLA does not place a duty on an employer to permit rescission of an employee's voluntary resignation."); *MacLean v. City of St. Petersburg*, 194 F. Supp. 2d 1290, 1303 (M.D. Fla. 2002) (where employee voluntarily resigned from her position, and employer had discretion as to whether to accept her resignation or allow her to rescind it, employee was not entitled to "reinstatement," as required to establish interference claim under FMLA).[7] Moreover, as discussed more fully below, Peterson does not adequately refute Defendants' contention that the refusal to reinstate him was unrelated to the exercise

---

[7] On this issue, the Court finds no meaningful distinction between an employee's voluntary resignation and request for reassignment.

of Peterson's FMLA rights. Accordingly, summary judgment is **GRANTED** on this issue.[8]

## II. FMLA Retaliation

The Court finds summary judgment on Peterson's FMLA retaliation claim is appropriate because Peterson has not carried his burden of showing the proffered reasons for denying his reinstatement to truck driving were pretextual. "To establish a genuine dispute of material fact as to pretext, a plaintiff cannot rely solely on temporal proximity of [his] FMLA leave and the adverse employment action but instead must offer some other evidence of retaliatory motive." *Jurczyk v. Coxcom, LLC*, 191 F. Supp. 3d 1256, 1266 (N.D. Okla. 2016) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006)). "An employment decision does not have to be correct, and can even be arbitrary or unreasonable." *Jarjoura v. Ericsson, Inc.*, 266 F. Supp. 2d 519, 532 (N.D. Tex. 2003) (citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988)). Here, Peterson requested to be transferred to another position and was refused reinstatement on the belief he "was not ready" to operate a semi-truck after battling

---

[8] Peterson also bases his interference claim on the allegation Defendants failed to advise him of his right to intermittent FMLA leave and delayed processing his paperwork. Even viewing this evidence in the light most favorable to him, the Court finds this evidence is immaterial to the present Motion. Peterson makes no serious effort to argue he was prejudiced by such actions. Despite the alleged failure to notify and processing delay, the record shows Peterson was granted all of the FMLA leave he requested.

severe depression. Peterson's own testimony states he does not know why he was not reinstated to his position as a truck driver. To establish pretext, however, Peterson relies on three arguments: (1) Defendants' alleged reliance on after-acquired evidence regarding his mental condition; (2) Defendants' changing position on Peterson's FMLA rights; and (3) Defendant' failure to follow procedure. However, the record belies each contention.

The record shows Defendants were aware of Peterson's mental condition when he requested FMLA leave. His mental condition did not become an issue until Peterson cited it as the basis for his transfer request. Moreover, contrary to Peterson's assertions, Defendants' arguments regarding his *eligibility* for FMLA benefits have remain unchanged. Nonetheless, the Court has found Peterson's eligibility for FMLA benefits to be immaterial to the instant dispute. Lastly, Defendants' alleged failure to follow protocol, even if established, is likewise immaterial. As stated above, the record shows Peterson was granted his request for FMLA leave. To this end, Peterson has not shown that the minimal delay in processing his paperwork evidences retaliatory motive on Defendants' part.

Regarding Defendants' stated reasons for denying Peterson's request for reinstatement, even assuming Defendants were mistaken or unreasonable in their belief Peterson was not ready to drive again due to his mental condition, the Court cannot reasonably determine such decision possessed the requisite lack of credence

11

or retaliatory motive needed to establish pretext. Accordingly, summary judgment on this issue is **GRANTED**.

III. **Constructive Discharge**

Lastly, the Court does not believe a reasonable jury could find on the summary judgment record, viewed in a light most favorable to Peterson, that he was constructively discharged. "A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004). "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Jeffries v. State of Kansas*, 147 F.3d 1220, 1233 (10th Cir.1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). "The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit." *Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002).

Peterson has failed to carry his burden of showing he was constructively discharged in two respects. First, Peterson continued to work in the warehouse for two years while being denied reinstatement as a truck driver. Second, Peterson testified at his deposition that he would have continued to work in the warehouse if

his current employer had not hired him. Based on the evidence, the Court finds summary judgment is appropriate on Peterson's constructive discharge claim.

## CONCLUSION

Defendants' Motion for Summary Judgment [Doc. No. 37] is **GRANTED** as set forth herein.

**IT IS SO ORDERED** this 15th day of September 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE